Sarah E. Carpenter, Executrix, *v.* Thomas Bowen et al.

## Sarah E. Carpenter, Executrix, *v.* Thomas Bowen *et al.*

1. MORTGAGES AND DEEDS OF TRUST: EQUITY OF REDEMPTION, AT COMMON LAW, NOT SALABLE UNDER EXECUTION. — At common law, the equity of redemption of a mortgagor, and the beneficial interest of the grantor in a deed of trust, were not subject to levy and sale under execution at law: they could be reached only in a court of equity.

2. SAME: SAME: MODIFIED BY STATUTE OF 1822. — Under the statute of 1822, in reference to estates possessed and holden in trust, it has been decided, that, when the debt is fully paid, the mortgagee or trustee holds but a naked legal title for the benefit of the mortgagor or grantor, who have the whole beneficial interest, which is subject to sale under execution at law. *Wolfe* v. *Dowell*, 13 S. & M. 105; *Thompson* v. *Wheatley*, 5 ib. 499; *Goodman* v. *Anderson*, 5 ib. 730.

3. SAME: SAME: UNDER STATUTE OF 1857, MAY BE SOLD UNDER EXECUTION AT LAW. — The provisions of art. 12, p. 308, of the Rev. Code, authorize the equity of redemption of a mortgagor or grantor in a deed of trust, to be sold under an execution at law, whether the debt be fully paid or not, or the trust fully executed or not, at any time, either before or after the breach of the condition of the mortgage or deed of trust, and before a sale under the same.

4. SAME: SAME: SAME: NOT SALABLE UNDER EXECUTION FOR DEBT SECURED BY MORTGAGE OR DEED OF TRUST. — The equity of redemption in property mortgaged or conveyed by deed of trust is not subject to sale under an execution at law emanating from a judgment rendered for the debt secured by the mortgage or deed of trust.

5. SAME: MORTGAGOR AND MORTGAGEE: GRANTOR AND TRUSTEE: NATURE OF THEIR RESPECTIVE INTERESTS. — The equitable doctrine, that a mortgagor in possession is regarded· as the true owner of the property mortgaged, that the mortgagee has but a chattel, except that it is considered as real property, to enable him to recover possession, and that the mortgage is only a security, — is now recognized in courts of law. The same doctrine applies to deeds of trust, which are but a species of mortgage with a power of sale in the trustee.

6. SAME: MADE FOR THE BENEFIT OF SURETY INURES TO BENEFIT OF CREDITOR. — A conveyance to a trustee for the benefit of a surety, conditioned that the conveyance shall be void if the grantor shall pay off certain debts for which the surety is liable, otherwise to remain in full force, though made without the knowledge of the creditor, yet, as its provisions are for his benefit, his assent will be presumed, and the deed will be held not only as indemnity to the surety, but as security for the debt. The

*Here it was given also o% secure his debt.*

trustee cannot discharge or defeat the trust, except to a purchaser for a valuable consideration without notice.

ERROR to the Chancery Court of Adams county. Hon. James M. Smiley, chancellor.

Appellees filed their bill against appellant, praying for a perpetual injunction against the sale of certain real estate in the city of Natchez, levied upon as the property of one Forbes, by execution emanating from a judgment in favor of appellant.

The appellees are: Bowen, who holds an unsatisfied mortgage of older date than the judgment, executed by Forbes, conveying the property levied on; Davis and Reynolds, who are creditors at large of Forbes; Lum, who is a surety of Forbes; and Hewett, who holds a deed of trust, junior to the mortgage but older than the judgment, executed by Forbes to protect Lum as his surety on certain debts then existing, of which that on which the judgment was obtained in favor of appellant is one, and that of Davis another; and for other debts which Forbes might contract in his business, and on which Lum might become surety, the debt of Reynolds being one of the liabilities contracted since the execution of the trust.

The bill states that the debt due Bowen and secured by mortgage has not been fully paid, and the title of the mortgagee has become absolute by forfeiture; that the debts to Davis, Reynolds, and appellants, testator, are overdue and unpaid, so that the legal estate of Forbes has ceased; that, since the rendition of the judgment in favor of appellant, Bowen has filed his bill to foreclose his mortgage; that appellant, on the debt on which her judgment is founded, has filed her bill to be subrogated to the rights of Lum in the deed of trust from Forbes to Hewett.

The deed of trust to Hewett conveys the property levied on by the execution, also Forbes' household and kitchen furniture, slaves, carriage and horses, store-house and dwelling, stock of merchandise, valued at $25,000, notes and accounts, estimated

at $20,000. It is to secure Lum against loss or damage on account of his liability as surety for the debts previously mentioned, and provides, that, should the notes not be paid at maturity, and that, when Lum shall deem it necessary for his protection, he may order the trustee to sell either for cash or on credit. Forbes is to remain in possession of the property until the trustee is required to sell.

The prayer of the bill is for a perpetual injunction against the sale of the real estate under the execution.

An injunction was granted in vacation; and at the return term, appellant answered, admitting the material facts stated in the bill. She avers that the value of the property at the time of the conveyance was greatly in excess of the debts secured; that a portion of the debts of Bowen, Davis, and Reynolds had been paid; that nothing had been paid to her; that Forbes had held possession of all the property, without being required to account for it; that Lum had never ordered the trust to be closed; that he and Forbes had combined together to hinder her in the collection of her debt; that there was no forfeiture of the deed of trust until Lum should be compelled to pay off the debts, or deem himself in danger and order a sale. The deed of trust is made an exhibit to the answer, and the judgment of the court asked as to whether it was not fraudulent on its face.

On filing her answer, appellant moved to dissolve the injunction on bill, answer, and exhibits; which motion was overruled; and from this decree, by leave of the court, this writ of error is prosecuted.

*W. P. Harris*, for appellant, argued: —

The reason why the interest of the *grantor* in mortgages and deeds of trust could not be sold prior to the Code of 1857, was, that the interest of the grantor was a mere equity, the legal title being in the mortgagee or trustee, and equitable interests were inaccessible to legal process. And so the general creditor was compelled to await the pleasure of the mortgage or deed of trust creditor, for the foreclosure of the mortgage or trust; or

was driven, first, to obtain his judgment at law, and exhaust his remedy there by a *nulla bona* return, and then file his bill in chancery to wind up the mortgage or deed; and, in doing this, he had to abide the terms and be bound by the provisions of the deed.

These cases were mostly so contrived as to render this circuitous remedy of precarious value. In a majority of cases, the mortgage or deed of trust creditor was a mere friend to secure indulgence to the debtor, by postponing action for an indefinite period, while he enjoyed his property in perfect security; and his creditors at large in the meantime were held at bay. Those kind of deeds were common, and skilfully framed to avoid objection on their face. The abuses which were thus entailed were conspicuous.

There was no more common subject of animadversion than the ever occurring, "deed o' trust," — the popular "working trust," of 1840, — covering a debtor who lived quietly and comfortably on his property in defiance of the general creditor.

This grievous and flagrant injury the authors of the Revised Code were sensible of; and there never was a more judicious remedy applied to an evil than that which they applied, by making this interest the subject of levy and sale. This gives the creditors at least what the *debtor* has no right to enjoy while his creditors go unpaid. It can work no injury to the *bonâ-fide* creditors having a lien by mortgage or deed of trust, for only the *interest of the debtor* can thus be sold. It has been found in practice to work justly.

No conceivable injury results to the creditors having liens: they may foreclose them if they see fit, and the rule is apt to be a fair and *bonâ-fide* one, for the *bonâ-fide* purchaser is there to see that no sham sale takes place. This sale cuts the gordian knot, disentangles the subtle plexus, and unmasks the parties. Immediately there is a stir amongst them. It hastens the winding up of the trusts, and subserves a great and wise public policy, — that of unfettering estates.

In this very case, the judgment and execution of Mrs. Carpenter set the whole sty in a roar. Bowen files a bill to fore-

close. Forbes, Lum, and Davis, and Reynolds — after a long sleep — wake up. The debtor must now pay rent to the purchaser, or devote the income and profits to the extinguishment of the liens.

There never was any sound reason in principle for withholding equitable interests from legal process. The practice was the simple result of conformity to the rules which separate two jurisdictions.

As an evidence of this, it has always been the practice to allow a junior incumbrancer to foreclose the mortgage, notwithstanding the existence of a *prior mortgage*, and such prior mortgagee need not be a party to the foreclosure, for the obvious reason that he is in nowise interested or affected. His mortgage still stands good, and he can foreclose it when he sees fit. The junior mortgagee forecloses the interest of the *mortgagor* only. In the present case, the same result follows, by selling the interest of the mortgagor or grantor under a judgment lien. The prior incumbrancers are not in anywise affected; the purchaser takes subject to the incumbrances. There is no cloud thrown over the title. But the clouds, which are the "working trust," and antiquated mortgage, are dispelled.

Bowen's proceeding to foreclose does not affect the question. It has no more weight than the existence of the mortgage; and the bill by Mrs. Carpenter, to be subrogated to the rights of Lum, is perfectly consistent with her proceeding to sell, Forbes' Equity of Redemption.

The case as to Bowen's mortgage raises the question, Can the interest of the mortgagor be sold under execution at law? which is conclusively settled by the Revised Code. Until that was adopted, it could not. But that code introduced a material change, which subjects the estate of the mortgagor to execution sale. *Vide* art. 12, p. 308.

The provision of the former statute had received a judicial construction which gave rise to this innovation. Hutch. Code, p. 610, contains the old law. This court, in construing it, held that it had reference to *satisfied* or *executed* trusts only, and satisfied mortgages.

But the code of 1857 altered the effect and language of this law, and declares such shall be subject to "*execution* whether fully *executed* or not, so as to pass whatever interest the *cestui-que* trust may have;" and it goes on further to declare that the mortgagor, as to all persons except the mortgagee, after forfeiture, shall be deemed to have the legal title.

The mortgage and deed of trust are substantially the same, differing only in form, and both are securities for the payment of the debt. These two forms of security are treated uniformly as standing on the same footing. *Wolfe* v. *Doe, ex dem. &c.,* 13 S. & M. 103; and *Bourman* v. *Catlett,* ib. 149. In disposing of the mortgage, we necessarily dispose of the deed of trust. The statute includes both.

*Primâ facie,* therefore, the interest of the mortgagor or grantor is liable to sale under execution. There is no pretence set up why the equity of redemption of the mortgagor shall not be sold; and the granting an injunction in such a case is like enjoining the statute itself.

The deed of trust is destitute of any claim to respect.

A more shameless disregard of justice to creditors can not well be imagined, than in the case at bar.

It is discretionary with the surety whether he will ever enforce the trust. He may by signing other notes make the trust perpetual; and if insolvent, he has no motive to enforce it. A deed of trust to indemnify a surety can not be enforced by him until he pays the debt; otherwise he might pocket the proceeds of sale and never pay the debt. See *McLean* v. *Ragsdale,* 31 Miss. 701.

Until the surety chooses, or is compelled to pay the debt, there can be, as to him, *no forfeiture.* The bill, therefore, is wrong in averring a forfeiture. In the meantime, what becomes of the income of property? The debtor is not bound to account; the possession is secured to him.

What is this estate of Lum, or this interest of Lum, which is to be interposed to protect the property from being applied to the very debt which it is assigned to provide for? It is a right to order a sale when he shall have paid the identical debt; and

this is a contingency never likely to occur. There might be some allowance for the experiment attempted by the bill, if it had proposed to sell the property, and divide the money amongst the creditors; but it is careful not to ask such relief.

There is no purpose now on the part of Forbes and Lum, or the creditors, to close this trust. It is simply a bill to tie the hands of a creditor who is trying to disturb the repose of Forbes, who has been and still is quietly eating the oysters, and throwing his creditors the shells.

Even before the Revised Code, the right of creditors, holding a mere deed of trust as security, to enjoin an execution where the debtor remained in possession, was denied by court of equity. *Bowyer* v. *Craig*, 3 Rand. 25; 10 S. & M. 81. The doctrine of this case has been approved by this court, and is especially applicable to a deed which is a mere indemnity to a surety for possible liabilities. The debtor here has a substantial interest reserved to him in the deed, being by its terms invested with possession and enjoyment of the property, without responsibility to account, for an indefinite time: this feature of the deed has been strongly condemned by this court. *Arthur* v. *Vicksburg R. R.*, 9 S. & M. 429; *Henderson* v. *Downing*, 24 Miss. 106; *Johnson* v. *Thweat*, 18 Ala. 741.

Though the answer does not charge fraud specifically, yet it complains of this feature of the deed. In this case, there has been an unjust preference given to some of the creditors; for, although when the contingency of a sale by the order of Lum shall arise, there is a provision that the proceeds of the sale shall be distributed *pro rata;* yet, so long as he chooses to stay his hand, the debtor is at liberty to devote the income either to his own use, or to preferred creditors; and this was done to the prejudice of the appellant, who received nothing.

The only peculiar equity set up in this bill, is the right of the creditors to a *pro-rata* distribution; and the right is contingent on a sale by the order of Lum. The right was not absolute, and unless Lum should choose to sell, the creditors might be paid in any order Forbes might see fit to adopt. The result was, that, under the operation of the deed, Mrs. Carpenter was

Sarah E. Carpenter, Executrix, *v.* Thomas Bowen et al.

postponed; and the moment she makes the attempt to get her share, the other creditors, uniting with Lum and Forbes, set up systematic opposition. The case, therefore, is briefly this: The appellant has, under the Revised Code, the right to sell the interest of Forbes the grantor, unless the complainants have shown a clear case in which the legal right should be restrained; and no such case is shown. Indeed the bill but presents fairly to view *the very evils* which the code was designed to correct. The deed of trust, which is put forward as the chief obstacle, is, on its face, such a contrivance as the courts of equity do not tolerate.

*Bullock and Walworth*, for appellant, argued: —

If the allegations in the bill are true, there are *two absolute* outstanding *legal* titles: one in Bowen the mortgagee, and the other in Hewett the trustee. The defendant has filed her bill in equity, seeking to be subrogated in place of Lum, *cestui-que* trust.

The creditors of Forbes and Lum are not, and cannot be parties to the deed of trust, except by the aid of a court of equity.

There is other property, besides that levied upon, mentioned in the deed of trust, — a stock of clothing, worth $25,000; book accounts and bills receivable, amounting to $20,000, for which Forbes may be liable to account. If the property levied on satisfies the judgment, the proceedings in chancery will be dismissed; and the legal title to this property is in Forbes the grantor (Rev. Code, 308, art. 12); and that legal title, also the interest of Lum, as *cestui-que* trust, is subject to execution at law. Ib.

Though in the case at bar the conditions of the mortgage were broken before judgment, still this does not divest the grantor of the legal title. The conditions of the deed of trust have not been broken; because it leaves it optionary with Lum to sell the property whenever he deems it necessary, &c.; and he has never thought so yet. Previous to the code of 1857, the equity of redemption in our State was not liable to execution

at law; but now, *contra*. Rev. Code, 308, art. 12, which is consonant to the doctrine of courts of equity: " That a mortgage is a mere security for the debt, and the mortgagee has only a chattel interest, and that, until foreclosure, the mortgagor continues the real owner of the fee." 4. Kent's Com. 163. " The equity of redemption is tantamount to a fee at law." Ib. 164.

But even without this change of our statute, the chancery court had no authority to enjoin the sale under execution. *Byrne et al.* v. *Anderson et al.*, 10 S. & M. 81. If the injunction in the case at bar had been dissolved, it would have been in harmony with the foregoing. But we, however, rely upon the change of our statute for the right to subject the property to our execution at law. The case of *Goodman* v. *Anderson et al.*, 5 S. & M. 730, is the leading case to the contrary. The statute, 29 Car. II., chap. 3, § 10, operated some change of the common law in this respect, which embraces only those trusts in which the *cestui-que* trust has the whole real beneficial interest, and the trustee, only the naked legal title; and our courts held that equitable interest cannot be sold at law, "till some statute *more comprehensive*, &c., authorize it." And now we have that statute. Rev. Code, 308, In this deed of trust, the trustee has not even a naked, formal, legal title, only under certain contingencies. This is all for the purposes of fraud, and therefore void.

*G. L. Potter*, for appellees, argued:—

The bill shows, that on the 15th of April, 1858, W. H. Forbes and wife mortgaged certain land in Natchez to Thomas Bowen, to secure the payment of three certain notes, all of which have been paid, except one, on which a small part has been paid. The condition of the mortgage was broken in February, 1861; and a bill to foreclose has been filed, and is still pending.

On the 3d of April, 1861, said Forbes and wife conveyed said land, and other property, to Josephus Hewett, as trustee for Isaac Lum, to save him harmless as security for Forbes, &c. One of the notes secured by said deed has been paid, also part of another since the date thereof. Forbes, with Lum as se-

curity, executed a note dated Jan. 29th, 1862, for $12,554, payable at twelve months, with ten per cent interest, to order of Forbes, and endorsed by him and Ira Carpenter, who waived protest, &c.; said note was assigned to Reynolds, only a small part of which has been paid. Reynolds has sued Forbes, Lum, and Mrs. Carpenter, executrix, &c. The conditions of the deed are broken, and it is absolute at law.

On the 10th October, 1866, Mrs. Carpenter recovered judgment against Forbes and Lum, for $19,821.52, on certain claims secured by the deed of trust; and also, in February, 1866, filed her bill against Forbes, Lum, and Hewett, to foreclose said deed of trust. The mortgage is the first charge on said land. The notes held by Davis and Reynolds are of equal dignity with the claim of said executrix, under the deed of trust. The land is greatly insufficient to pay, &c. The mortgage and deed of trust have become absolute, and the land is not liable to sale under execution, in a judgment subsequent thereto, and to breach of condition.

The answer to the bill of injunction admits the allegations, but denies that the conditions of the deed of trust have been broken, setting up certain new matters upon information, which are not material, as they cannot be regarded on motion to dissolve "in bill, answer, and exhibits."

Such a motion is never sustained. The material part of the bill must be denied first. The motion did not deny a want of equity *upon the bill,* but was based *upon the answer.* If the bill was deemed insufficient, why did she not demur? The only question, then, before the court is, whether the *answer* entitles her to an order dissolving the injunction; and as the material allegations of the bill are admitted, the question is answered conclusively.

2. Counsel insist that the interest of Lum, under the deed of trust, is liable to execution by force of the Rev. Code, art. 12, 308; but this is a mistake. The trusts or uses referred to are very different from the interest of Lum: they are trusts or uses of such a nature that the *cestui* possesses therein an equitable estate, of which he is entitled to enjoy the beneficial interest.

The words of the statute are, " *Estates* holden or possessed in trust for another." " Estate," here means an interest in land held for the use of another; that is, the legal title is in a trustee, but he holds for the beneficial use and enjoyment of that other, who, for example, may be entitled to the use of it, or to the rents and profits : it is such an estate as the usee may charge, or encumber with his debts. ·

Lum, under this deed of trust, has no such interest, and no estate in any legal sense. If his interest be sold under execution, what will the purchaser get ?   Look to the statute, and the case is plain.   The " estate " to be charged or sold is the *whole* estate ; but the legal estate in the trustee and the usee.   The thing to be charged or sold is the " estate holden or possessed in trust for another," the estate held by the trustee ; and the purchaser takes it discharged of the trust, when the usee has the whole beneficial interest.   It is not the *use*, but the " estate " held for the use, which is made subject to sale.   This provision is similar to that in Hutchinson's Code, and decisions heretofore made.   *Presley* v. *Rodgers*, 24 Miss. 523 ; *Goodwin* v. *Anderson*, 5 S. & M. 742 ; *Thompson* v. *Wheatley*, 5 S. & M. 506. The holders of the notes, under the deed in trust, have an equitable interest ; it is for their benefit ; and if the argument of counsel be correct, their interest may be sold under execution against them !   Forbes only had an equity of redemption, which he conveyed to Lum.   He had no " estate " liable to execution. He did not " own " an " interest " in the " trust."   In the Rev. Code, art. 12, 308, " whether the trusts be fully executed or not," does not affect the question.   There are *executory* as well as executed trusts.   Hill on Trustees, 328.   Those words were intended to embrace the former, and not intended to change the law.

3. It is argued that the mortgagor or grantor in trust " shall be deemed the legal owner of the property conveyed ; " hence the property shall be sold under execution against Forbes.   But the statute says not so as against the mortgagee or his assigns, or the trustee, " after breach of the condition."   In the case at bar, the condition of both mortgage and deed of trust were

broken before date of the judgment; and the legal title is not in the mortgagor.

*Vide* Rev. Code, art. 14, 308, as to entry of "satisfaction," &c., "*and the title shall thereby revest in the grantor.*" It is held by counsel that it was already in the grantor, and none to "revest." The statute does not say he shall be legal owner in fact, but that he shall be "*deemed*" such, plainly for the purpose of maintaining legal actions for the protection of the estate, except as against the mortgagee or trustee, after conditions broken. A trustee is "owner of the legal title;" but is the land, because of that fact, liable to execution? There must be a *beneficial* interest; something of marketable value, in the judgment debtor. The mortgagee has no such interest. Our statutes contemplate a sale under execution to be of *the land* itself; that the sheriff's deed shall "vest in the purchaser all the right, title, and interest," &c. in the land, "which could by law be sold under such execution." Rev. Code, art. 290, 531. But there are valuable interests in land that can not be sold under legal process; *e.g.*, that of a mortgagee, who, under the common law, had an absolute title and beneficial interest. If the precise beneficial interest possessed by this mortgagor had been created in this land as a trust, in favor of *cestui-que trust*, would that interest be subject to sale under execution against the latter?

The cases cited show that it would not. A purchaser of the interest of a mortgagor acquires the same beneficial interest in the estate, whether before or after breach of conditions.

After breach, the mortgagee is, at common law, absolute owner; and before breach he is legal owner, with a beneficial interest in the estate as a security for his debt; but yet, he has no interest subject to sale under execution.

What kind of *interest* must it be to be subject to levy and sale? Either a legal or equitable. If it be an equitable interest, it must be "the whole beneficial interest; a bare and simple trust, not of a complicated nature, and where the interests of no other party are mixed up with the debtor's title." *Presley* v. *Rodgers*, 24 Miss. 523: not absolutely the "whole beneficial

interest," but a definite equitable estate in the land. Now neither the mortgagor or mortgagee, in this case, has such an estate; neither has a definite, beneficial interest, such as a half, or third, &c. Under our system, the law looks to *estates* in lands; and these estates may be either legal or equitable; but an indefinite interest is not an estate known to the law.

The sheriff's sale and deed "shall vest in the purchaser all *the right, title, and interest* which the defendant had in and to such lands and tenements, *and* which by law could be sold under such execution. Rev. Code, arts. 290, 531.

There is no such thing as a right and title to land in a party who has an indefinite interest therein, not constituting *an estate* in it, either legal or equitable. But the statute speaks of a "right, title, and *interest*" — the three combined. There may be a naked "right and title," as that of a bare trustee, but this will not suffice; there must be an "*interest*" also in the judgment debtor. It must be a definite, beneficial interest, such as is the essence of an *estate* in the land, either legal or equitable. So the question is, has the mortgagor such an "interest" in the land, "which *by law* could be sold under execution"?

This statute does not declare it may be sold, but leaves that to the "law" then regulating execution sales. It is admitted that previous to the new code the mortgagor had not such an "interest" as was subject to execution sale. Why not? Under the old law, the mortgagee held the legal estate, but the beneficial interest of the mortgagor was the same, precisely, as it now is. His interest, previous to the new code, was, confessedly, an equitable interest, and the mortgagee, holding the legal, was trustee for him to the extent of that interest — trustee for the mortgagor, subject to payment of the mortgage debt.

Why, then, might not the interest of the mortgagor be sold under that clause of the statute which provides for the sale of equitable interests — equitable estates held in trust? The answer is given in *Presley* v. *Rodgers*, 24 Miss. 523.

It was not "the whole beneficial interest" — "a bare and simple trust, not of a complicated nature, and where the interests of no other party are mixed up with the debtor's title."

It was because the interest of the mortgagee was, to the extent of his debt, mixed up with the equity of the mortgagor.

The appellant, therefore, gains nothing by asserting that the interest of the grantor is now, since the Revised Code, a legal interest; for the court before decided that the interest of the mortgagor is not such an interest in land as can be sold, even though it had been regarded as a legal interest. Whether the mortgagor has the legal title or not, the fundamental objection remains that his interest is indefinite, and mixed up with the paramount interest of the mortgagee. Suppose a case where the mortgage is forfeited, and the debt is just half the market value of the estate. Under the old law, the mortgagee would have the legal title, and a pecuniary interest equal to one half the value of the land; the other half-interest being in the mortgagor. It is admitted that the interest of this mortgagee is not subject to sale under execution. Now, how is the case altered, if we transfer the legal title to the mortgagor? If you cannot sell under execution the legal title of the mortgagee, coupled with a half-interest in the value of the estate, by what rule can you sell the legal title of the mortgagor, coupled with a half-interest in the value of the same estate?

So under the English statutes for the sale of equitable interests, an equity of redemption could not be sold under execution. 5 S. & M. 744; Lewin on Trustees, 278, 536, 547. Courts in other States are not partial to the practice of selling the equity of redemption, which influenced ours to decide that such uncertain interests could not be sold. 13 S. & M. 442; 5 S. & M. 745. These reasons still exist. In 13 S. & M. 442, the court went upon the ground that there was "no express declaration in the statute, and upon the impolicy of such sales;" and such is the precise case here.

In States where the interest of the mortgagor is held liable to execution, the courts hold that the *mortgagee* cannot sell such interest under a judgment upon the mortgage debt. The judgment which Mrs. Carpenter is attempting to enforce is founded on one of the notes secured by the deed of trust. 1 Pow. Mort. 254 *a*, n. 1; Minot's Dig. 63; *Camp* v. *Coxe*, 1 Dev. & Batt.

(law) 52, where the matter is fully discussed; *Beaver* v. *Parker*, 2 Iredell, Eq. 40; *Goring's Exr.* v. *Shreve*, 7 Dana, 64; *Walter* v. *Tate*, 4 B. Mon. 531; *Thornton* v. *Pigg*, 24 Me. 251; 3 Johns. Ch. 275.

Chancery will enjoin such a sale. *Tice* v. *Annin*, 2 Johns. Ch. 125.

The same rule applies where the judgment creditor is a third party, and not the mortgagee, if the judgment is upon a mortgage note. *Bronston* v. *Robinson*, 4 B. Mon. 142. If the interest of a mortgagor was sold under a judgment on the mortgage debt, and purchased by the mortgagee, he would be "just where he began," and would "hold the mortgaged land subject to redemption." 24 Me. 251.

It would not do to hold that the interest of the mortgagor might be thus sold for a trifle, and permit the mortgagee to hold the estate as if he had purchased *it*, and not a new equity of redemption; and then pursue the mortgagor for the balance of the debt. *Tice* v. *Annin*, 2 Johns. Ch. 125.

5. Appellant has now a bill pending to enforce a sale under the deed in trust. The whole matter, by her act, was brought before the Chancery Court; and she should not be permitted to sell under the judgment, and thus complicate matters, and also harass the debtor by two proceedings.

It has been suggested that the deed of trust is fraudulent and void. Why was not that point taken in the answer? She has accepted the deed, and has a bill pending to enforce it: she can not blow hot and cold on the same matter, in the same court. Although the debts she seeks to enforce are secured by the deed, they were contracted *after* it was executed. She thus stands as a subsequent creditor, and cannot object to the deed. Rev. Code, art. 3, 359. Moreover, if the deed of trust be put out of the case, the prior forfeited mortgage remains, and all the questions arise upon that.

Counsel argues the purpose of art. 12, p. 308, Rev. Code, was to give legal title to purchasers, so that they may sue at law; but a single suggestion will prove his mistake. When a vendor of land, under contract to convey, had paid the whole

purchase-money, he has the entire equitable interest, and it may be sold under the statute.    This was decided by the court under the old law, but it was held that the purchaser got but an equitable title, and must go into chancery.    This was an evil intended, as counsel argues, to be remedied by the code of 1857 ; but we look in vain for any provision in that code vesting the legal title in such vendee, in payment of all the purchase-money.    It stands as before the code, and, therefore, it is not probable that the purpose of art. 12 was such as counsel assumes.    Else why this palpable omission ?

As to forfeiture of deed of trust, the case is plain.    The breach of condition took place on default in payment at maturity ; after that Forbes might, by express provision of the deed, require sale.    Such sale cannot be made until forfeiture ; and if the argument of counsel be true, no sale could be made to raise money, as contemplated by this deed, to relieve the security from the necessity of paying the notes.

In this respect, this deed is wholly different from that in the case of *McLean* v. *Ragsdale*, 31 Miss. 702, where there seems to have been no provision for a sale to raise money, so that the security be not compelled to pay.

Let judgment creditors file their bills to have the estate sold, and a court of chancery will give full justice to all.    See Acts of 1867, art. 2, 220.

Peyton, J., delivered the opinion of the court.

This was a bill filed in the Chancery Court of Adams county, by the appellees, to enjoin a sale of certain real estate in the city of Natchez, in said county, under an execution at law, emanating from a judgment of the Circuit Court of said county, in favor of the appellant against the appellees, William H. Forbes. and Isaac Lum.

The bill alleges that said Forbes and wife, on the 15th day of February, 1858, executed a mortgage to one of the appellees, Thomas Bowen, to secure the payment at maturity of three promissory notes, made by said Forbes in favor of said Bowen, of that date, and payable in one, two and three years from date,

and for the sums respectively of $1,167\frac{44}{100}$, $1,273\frac{57}{100}$, and $1,379\frac{70}{100}$. That said mortgage deed was duly recorded; that the first two notes have been paid, and a small part of the third; and that said Bowen, on the 26th day of January, 1867, filed his bill in chancery to foreclose the said mortgage.

That afterwards, on the 3d day of April, 1861, said Forbes and wife executed a deed of trust of the real estate, mortgaged to said Bowen, as aforesaid, to Josephus Hewett as trustee to secure, protect, and indemnify the said Lum against eventual loss for and on account of his then existing liabilities as joint-drawer for the accommodation of, and as surety for, said Forbes, on certain promissory notes therein specified, to wit: one dated February the 3d, 1860, for $5,000, payable twelve months after date, to the order of and indorsed by said Forbes, and held by said complainant, Davis; one dated February the 4th, 1860, for $8,000, payable twelve months from date to Ira Carpenter or order, and another to W. A. Britton & Co., for $8,500, dated April 9th, 1860; and also on account of any further liabilities which might be incurred by said Lum for said Forbes in the renewal of said notes, and in the further business of the latter. The deed of trust provides that if said Forbes should pay said promissory notes and all interest thereon, and any and all renewals thereof, and also any other and additional liabilities or securityship to which said Lum might or should subject himself, or become liable for the further accommodation of said Forbes, during the continuance of said trust, then the said deed and trust were to be null, and to determine; but in the event that said notes and liabilities, or any of them, should remain due and unpaid beyond the maturity thereof, the trustee, upon the request of Lum, shall, after giving notice thereof, sell said real estate; and the proceeds of sale, after payment of the expenses and a proper compensation for the performance of said trust, he shall apply to the payment and discharge of the indebtedness mentioned and provided for in said deed; and the surplus, if any, of money or property, to deliver over to said Forbes or his assigns; which deed was duly acknowledged and recorded.

That the said Ira Carpenter having departed this life, on the 28th day of February, 1866, Sarah E. Carpenter, the executrix of his last will and testament, filed her bill of complaint in the Chancery Court of the said county of Adams, against the said Forbes, Lum, and Hewett, to foreclose the said deed of trust, and for sale of said real estate ; and also at the same time instituted her action at law, in the Circuit Court of said county, against the said Forbes and Lum, to recover judgment on a note and draft, dated May 21st, 1862, and February the 1st, 1862, respectively, alleged to be covered by said deed of trust ; one of them a renewal, and the other a further and additional liability of said Lum for said Forbes, in the business of the latter as provided for in said deed ; and that on the 10th day of October, 1866, the said Sarah E. Carpenter recovered judgment against the said Forbes and Lum for the sum of $19,821\frac{52}{100}$. That said bill of complaint was amended by making said Davis and others defendants, and that the same is now pending and undecided.

And that said executrix has caused execution to issue upon said judgment at law, notwithstanding the said mortgage and deed of trust, and her said suit upon the latter, and has had the same levied by the sheriff upon said real estate, in said mortgage and deed of trust contained; and that the sheriff is about to advertise and sell said property under said judgment and execution for the payment thereof, and will do so unless restrained and enjoined therefrom.

Sarah E. Carpenter, in her answer, admits the existence of the mortgage and deed of trust as set forth in the bill of complaint, and that she might, if so disposed, claim the benefit of the trust estate by being subrogated to the rights of Lum ; but denies that said deed of trust was made to secure the payment of any of the debts of said Forbes named in said deed, and avers that the whole object of said deed was to secure the said Lum on account of his liabilities for the accommodation of said Forbes.

She admits that she filed her bill in equity against the said Forbes, Lum, and Hewett as stated, and at the same time com-

menced her suit at law against the said Forbes and Lum, and that she recovered a judgment against them as stated in the bill, and that execution issued thereon, which the sheriff levied on the real estate mentioned in said deeds, and would have advertised and sold the same under said execution, had he not been enjoined from so doing; insists that neither said mortgage nor deed of trust can be interposed to prevent the sale of said property under execution at law. To satisfy the said judgment; admits that said Bowen has filed a bill in equity to foreclose his mortgage since the date of her said judgment, and insists that by her judgment she has obtained a priority of lien upon the property of Forbes and Lum, and that she cannot be precluded from pursuing her legal remedy on account of the breach of the conditions of said mortgage; that the conditions of the deed of trust have not been broken;.and that said Forbes is in the possession of the said real estate, receiving the rents, issues, and profits thereof.

At the April term of said court, the appellant moved to dissolve the injunction in this case upon the bill, answer, and exhibits; which motion was overruled by the court; and the cause comes here by appeal from that order.

The record presents for our consideration three important questions: 1, Whether the equity of redemption in property mortgaged or conveyed by deed of trust as security can be sold under execution at law? 2, If so, is it subject to sale under execution for the debt secured by the mortgage or deed of trust? and, 3, Is the debt of the appellant secured by the deed of trust?

At common law, an equity of redemption was not subject to levy and sale under execution at law. It could be reached only in a court of equity. But, under our former statute of 1822, which provides that "estates of every kind, holden or possessed in trust, shall be subject to like debts and charges of the persons to whose use or to whose benefit they were or shall be respectively holden or possessed, as they would have been subject to if those persons had owned the like interest in the things holden or possessed as they own, or shall own, in

the uses or trusts thereof," it has been decided by this court, that the interest of a vendee of land, who holds a bond for title when the purchase-money is paid, may be sold under execution at law, after payment of the purchase-money. *Thompson* v. *Wheatley*, 5 S. &. M. 499. In case only part of the purchase-money has been paid, the interest of the vendee is not subject to sale under execution at law. *Goodwin* v. *Anderson*, ib. 730. But, even in the case of a sale of such interest under execution, after full payment of the purchase-money, the purchaser must go into equity to divest the legal title. He bought but an equity, which a court of chancery alone could enforce. The principle of these cases extends to mortgages and deeds of trust, to the sale of an equity of redemption, and to the interest of a grantor in a deed of trust. They are all of kindred character. When the debt is fully paid, the mortgagee or trustee holds but a naked legal title for the debtor, who has the whole beneficial interest, which is subject to sale under execution at law. But, until full payment, the debtor has no interest which can be sold under legal process. *Wolfe* v. *Dowell*, 13 S & M. 108.

Uses and trusts were not subject to executions at common law. The statute of 1 Richard III. c. 1, was the first legislative enactment which subjected uses to an execution upon a judgment. This statute became obsolete after the Statute of Uses (27 Hen. VIII. c. 10) united the possession and the use. But the subsequent revival of uses, under the name of trusts, called for a further interposition of the legislature, and a clause was introduced in the Statute of Frauds (29 Car. 2, c. 3, § 10), which subjected trusts to execution at law. 2 Powell on Mortgages, 602, 603. The last-named statute applies to trusts of freehold lands only; our statute is more comprehensive, embracing within its scope trusts of both real and personal property. The English statute has been construed to authorize a sale of the trust estate only in cases in which the trust has been fully satisfied. In the case of *Forth* v. *Duke of Norfolk*, 4 Madd. Rep. 504, the vice-chancellor says, " A judgment creditor has at law, by the Statute of Frauds, execution against the

equitable freehold estate of the debtor in the hands of his trustee, provided the debtor has the *whole beneficial interest ;* but, if he has left a partial interest only, the judgment creditor has no execution at law, though he may come into a court of equity, and claim there the same satisfaction out of the equitable interest as he would be entitled to at law if it were legal. This seems to have furnished the rule adopted by this court, in the construction of the act of 1822, without any distinction between trusts of real and personal estate.

We come next to consider whether the statute of 1857 has made such a change in the law in this respect as to require a different construction, with regard to the sale of trust estates, than that which we have seen has been given to the former statute. It provides that "estates of any kind, holden or possessed in trust for another, shall be subject to the like debts and charges of the person to whose use, or for whose benefit, they are holden or possessed, as they would have been subject to if the person had owned the like interest in the thing holden or possessed as he may own in the uses or trusts thereof, whether the trusts be fully executed or not, and may be sold under execution at law, so as to pass whatever interest the *cestui-que* trust may have; and, before a sale under a mortgage or deed of trust, the mortgagor shall be deemed the owner of the legal title of the property conveyed in such mortgage or deed of trust, except as against the mortgagee and his assigns, or the trustee, after breach of the condition of such mortgagee or deed of trust." Rev. Code, 308, art. 12.

In this statute, the legislature has incorporated the equity doctrine that a mortgage is a mere security for the debt, and that, until a sale under it, the mortgagor continues the real owner of the property. The equity of redemption is considered to be the real and beneficial estate, tantamount to the fee at law, and it is accordingly held to be descendible by inheritance, devisable by will, and alienable by deed. As between the mortgagor and mortgagee, the fee of the estate passes to the mortgagee at the execution of the deed. This is necessary to enable him to guard and protect his security. But, as

between the mortgagor and *other persons*, he is considered as having the legal estate in himself, and the power of conveying it to a third person, subject to the incumbrance of the mortgage. 2 Greenleaf's Rep. 132; 1 Washburn on Real Estate, 589, § 6. In a court of chancery, the mortgagor is viewed as being seized of the freehold, and the mortgagee as having a lien upon the land by way of pledge only. In equity, the mortgagee is only a trustee, and the mortgage only a security. This doctrine, both ancient and uniform, is founded in a correct view of the true nature and character of the contract of the parties, in its substance and intent.

It has been said by a distinguished jurist (Lord Redesdale), that the distinction between strict law and equity is never, in any country, a *permanent* distinction. Law and equity are in perpetual progression, and the former is constantly gaining ground upon the latter. A great part of what is now strict law was formerly considered as equity; and the equitable decisions of this age will unavoidably be ranked under the strict law of the next.

This equitable doctrine, concerning the rights of mortgagor and mortgagee, has gradually been naturalized in the common law code, and, by the adoption of principles long established in chancery, it has become well settled, in courts of common law, that the mortgagee, *until foreclosure*, has only a chattel interest; that a mortgage is but a *charge* upon the land, and that whatever would give the money will carry the estate in the land along with it, to every purpose. The estate in the land is the same thing as the money due upon it. It will be liable to debts; it will go to executors; the assignment of the debt will draw the land after it. From these properties of the mortgagee's estate, it appears, in the strongest manner, that it is not *in the land*, but in the security only. The debt is considered as the principal, and the mortgage as an incident only. *Green* v. *Hart*, 1 Johns. 580. In *Jackson* v. *Willard*, 4 Johns. 41, 42, Chief-Justice Kent says, "The real nature of a mortgage, in the equity sense of it, has been repeatedly recognized in the courts of law; and it has been said and repeated, that it was an

affront to common-sense to say that a mortgagor in possession was the real owner; that the mortgagee, notwithstanding the form, has but a chattel, and the mortgage is only a security." It is not considered as a conveyance of land within the Statute of Frauds. *Runyan* v. *Mersereau*, 11 Johns. 534. Until foreclosure, whether the mortgagee has possession or not, the estate mortgaged is a pledge only; the relation of debtor and creditor exists, and the equity of redemption is unimpaired. Although the mortgagee has a chattel interest only, yet, in order to render his pledge available, and give him the intended benefit of his security, it is considered as real property, to enable him to maintain ejectment for the recovery of the possession of the land mortgaged. It is only considered as real estate for the purpose of enabling the mortgagee to get it into possession. When contemplated in every other point of view, it is personal property. This is the conclusion to be drawn from a review of the English and American authorities.

It has been said by a distinguished American jurist, that, "not only the original severity of the common law, treating the mortgagor's interest as resting upon the exact performance of a condition, and holding the forfeiture or breach of a condition to be absolute, by non-payment or tender at the day, is entirely relaxed; but the narrow and precarious character of the mortgagor at law is changed, under the more enlarged and liberal jurisdiction of the courts of equity. Their influence has reached the courts of law; and the case of mortgages is one of the most splendid instances in the history of our jurisprudence, of the triumph of equitable principles over technical rules, and of the homage which those principles have received by their adoption in the courts of law. 4 Kent, 158. This doctrine in relation to mortgages applies with equal force and propriety to deeds of trust, which are but a species of mortgage with a power of sale in the trustees. *Wolfe* v. *Dowell*, 13 S. & M. 108.

From the examination and investigation which we have made, it appears that in many of the States of the Union, independently of statutory regulations, the rule has prevailed, that an equity

of redemption was vendible on an execution at law. Such sales may operate injuriously upon the interests of debtors, in cases in which property is permitted to be sold under execution at law, before the debt is paid or the trust is fully satisfied. The purchaser, not knowing the extent of the incumbrances, which in many cases cannot possibly be ascertained until an account is taken, would scarcely ever venture to give the value of the equity of redemption; and the result would be, in complicated cases, a sacrifice of the debtor's interest. There is no necessity to subject estates holden in trust, which has not been fully executed and satisfied, to execution at law. If the debtor should be dishonest enough to make conveyances of any kind for the purpose of hindering, delaying, or defrauding his creditors in the collection of their debts, certainly a court of chancery would be the most appropriate tribunal to remove the clouds, expose the fraud, set aside such conveyances, and subject the property to the payment of his debts. And in case the transaction has been fair and honest, it is generally best to resort in the first instance to that court in which an account can be taken of the amount of the incumbrances, the equity of redemption foreclosed and the property subjected to the payment of the debts. Even in cases in which the equity of redemption is sold under execution at law, the purchaser is frequently compelled to go into a court of equity to redeem, before he can enjoy the fruits of his purchase.

The legislature of 1857 must be presumed to have known the construction which had been given to the statute of 1822 in relation to the sale of trust estates, by which they were subjected to sell under execution at law, when the trust was *fully executed*. With this knowledge, they so changed the law as to provide that " estates of any kind holden or possessed for another shall be subject to the debts and charges of the *cestui-que* trust, whether the trust be *fully executed or not*, and may be sold *under execution at law* so as to pass *whatever interest* the *cestui-que* trust may have." This was certainly a very material and important change in the law upon this subject, and the language is so clear and explicit as to leave but little room for

construction. Courts have nothing to do with the propriety or expediency of a statute: the intention of the legislature must always control in the construction of a statute. And the court must judge of that intent from the language they have used to express it; and where the language is clear and explicit, and susceptible of but one meaning, and there is nothing incongruous in the act, the court is bound to suppose the legislature intended what their language imports. Courts may give a sensible and reasonable interpretation to legislative expressions which are obscure, but they have no right to distort those which are clear and intelligible. The ordinary rule is, that the intention can only be determined by the fair and natural import of the terms used, and in view of the subject-matter of the law. Guided by this rule, we have arrived at the conclusion that the law authorizes a sale under execution at law of the equity of redemption of a mortgagor, or grantor in a deed of trust, whether the debt be wholly paid or not, or the trust fully executed or not, at any time either before or after the breach of the condition of the mortgage or deed of trust and before a sale under the same.

The former statute subjected the interest of the *cestui-que* trust, in the trust estate, to sale under execution at law, only in cases in which the trusts had been fully executed. The present code is intended to supply what was, no doubt, supposed to be a defect in the law, by subjecting the interest of the *cestui-que* trust in the trust estate to execution at law, as well in cases in which the trusts had not been fully executed, as in those in which they had been; and to provide that the partial as well as the entire beneficial interest of the *cestui-que* trust may be sold under execution at law.

This brings us to the consideration of the second question presented by this record. Is the equity of redemption in property mortgaged, or conveyed by deed of trust, subject to sale under executional law for the debt secured by the mortgage or deed of trust?

The equity of redemption is the excess of the value of the property conveyed over and above the debt secured by the

mortgage or deed of trust, and the purchaser thereof stands in the shoes of the debtor, and takes the property, subject to the incumbrance, which he must pay off and discharge, in order to perfect his title to the same. The debtor is entitled to the benefit of the proceeds of the sale of his equity of redemption. But when it is sold under an execution for the debt secured by the mortgage or deed of trust, the proceeds of the sale, according to the very terms of the execution, must be paid to the plaintiff in the execution or brought into court for his use; and this would necessarily extinguish, to that extent, the incumbrance subject to the whole of which the purchaser bought the equity of redemption. The very sale implies that the equity is worth something, and yet under such sale the debtor would get nothing; his equitable interest would be thereby sacrificed, and the purchaser would have a credit on the incumbrance to which he would not be legally entitled. This surely could not have been in the contemplation of the legislature. It is very clear to the court that the situation of the creditor, whose debt is secured by mortgage or deed of trust, is not within the mischief intended to be remedied. The object of the statute is not to foreclose mortgages or deeds of trust, and make them more effectual as securities to such creditors, but to subject the equitable interest of the mortgagor or grantor to the satisfaction of those of his creditors who had not a specific lien on the property. The authorizing a sale of the equity of redemption implies that the thing pledged is worth more than the debt; and the act of making such pledge, and thereby withdrawing the thing from execution, is regarded, in a degree, as a species of fraud on the general creditors, whose executions are thereby hindered. For such creditors the provision must have been made. To allow a sale of the equity of redemption upon legal process, emanating from a judgment for the debt secured by mortgage or deed of trust, would be in contravention of the *contract of the parties*, as understood in a court of equity, by which the debtor had a right to redeem. And the court will not allow him to be deprived of that right in this summary way. The statute did not mean to interfere with the stipulations of the parties, as they

might affect them, either at law or in equity. It was a designed to prevent a mischief to other persons, who were strangers to those stipulations. If the creditor is not satisfied with his security, he may resort to other property of his debtor; but against the estate on which he has taken a security, he ought not to act, but upon the footing of that security, and according to its terms, in their established sense. He needs no other aid to come at his debt, and in all reasonable propriety should be left to the remedy provided by the terms of his own contract with his debtor.

We think it was the intention of the legislature to limit the statute to general creditors, or to all those judgments and executions other than for the debt secured by the mortgage or other incumbrance. And this view we find sustained by adjudications in other States, upon similar statutes, in which it has been decided that an equity of redemption is not subject to sale under an execution at law for a debt secured by mortgage or deed of trust. *Goring* v. *Shreve,* 7 Dana, 64; *Waller* v. *Tate,* 4 B. Monroe, 529; *Camp* v. *Coxe,* 1 Dev. & Battle's Law, 52; *Dean* v. *Parker,* 2 Iredell's Equity, 40; *Tice* v. *Annin,* 2 Johns. Ch. Rep. 130; *Atkins* v. *Sawyer,* 1 Pick. 351; *Washburn* v. *Goodwin,* 17 Pick. 137; and *Thornton* v. *Pigg,* 24 Missouri, 249.

We have now arrived at the third and last question presented by the facts of this case,— Is the debt of the appellant secured by the deed of trust ? We think it was. Although Ira Carpenter may have had no knowledge of this deed at the time it was executed, yet as its provisions were for his benefit, his assent to it will be presumed. The conveyance was intended not only to indemnify Lum against his liabilities as surety for Forbes, but manifestly to secure the payment of the debts therein specified. It was to be void on the condition that the notes and liabilities therein mentioned were paid at maturity, otherwise not. What were formerly conditions are now regarded as trusts. Carpenter had a trust in, or equitable lien upon, the property on the execution of the deed, which Lum and Hewett, the trustee, had not any power or right to discharge or defeat, unless to a

*bonâ-fide* purchaser for valuable consideration without notice, Hewett will be regarded as trustee, for the benefit of the creditors named in the deed of trust. The deed was to become void, not upon indemnifying Lum, but if the debts shall be paid at maturity. He had a right, by the very terms of the deed, to have the property sold at any time after the maturity of the debts or any of them, to pay the same, before he is damnified; and the proceeds of the sale, after paying the expenses of executing the trust, are expressly required to be applied to the payment of the debts and liabilities specified in the deed, and the surplus, if any, is to be handed over to Forbes, or his assigns. Lum, it is conceded, is the surety for Forbes in the debt, which has been reduced to a judgment in favor of appellant, and as such surety he has taken the deed of trust as counter-security. And in all such cases it is well settled, that if a surety has a counter-security from the principal debtor, it shall inure to the benefit of the creditor, who may in equity reach such security to satisfy his debt. This doctrine was recognized and enforced in the case of *Ross* v. *Wilson,* 7 S. & M. 753, 766, and is laid down as well established in all the elementary books to which we have had access, that treat upon the subject of principal and surety. 1 Story's Equity, 515, § 502; Pitman on Principal and Surety, 88; Theobald on P. & S. 254; Burge on Suretyship, 324. It is upon this principle that it has been decided, that property mortgaged to a surety, bound for a particular debt, cannot be sold under an execution to satisfy that debt. *Bronston* v. *Robinson,* 4 B. Monroe, 142.

The appellant, by prosecuting her suit in the chancery court, which appears to be now pending, will be enabled to reach the security given to Lum, and subject the property therein specified to those debts of Forbes that are mentioned and provided for in the mortgage and deed of trust. That is the most appropriate tribunal for the fair and equitable adjustment of matters of this character.

Upon the whole, we conclude that the law does not authorize the sale of the property specified in the deed of trust under an execution, emanating from the judgment in favor of the

appellant against the appellees, William H. Forbes and Isaac Lum.

The decree must, therefore, be affirmed.